**Osie Bell BLOUNT et al., Plaintiffs,**

v.

**Patricia Roberts HARRIS et al., Defendants.**

**No. 77–463C(4).**

United States District Court, E. D. Missouri, E. D.

May 16, 1978.

Kathleen O'Blennis and Richard Chase, The Legal Aid Society, St. Louis, Mo., for plaintiffs.

Robert D. Kingsland, U. S. Atty., St. Louis, Mo., for defendants.

## MEMORANDUM

FILIPPINE, District Judge.

Plaintiffs filed suit seeking, inter alia, relocation expenses as provided for in the Uniform Relocation Assistance and Real Properties Act of 1970 (URA), 42 U.S.C. § 4601, *et seq.*

Defendants filed their motion for summary judgment. Plaintiffs filed a memorandum in opposition stating that there are material facts in issue and that defendants are not entitled to summary judgment as a matter of law. Plaintiffs' memorandum does not, however, indicate which facts plaintiffs feel are in issue. Instead, their memorandum argues only points of law. There are no material facts in issue, and summary judgment is, therefore, appropriate. Rule 56(c) Fed.R.Civ.P.

Plaintiffs are former residents of The Nursing Inn St. Louis, which was a nursing home constructed in 1966 with a mortgage insured by the United States Department of Housing & Urban Development (HUD). The mortgage was assigned to HUD on March 10, 1971 by the lender. HUD acquired title to the home at a foreclosure sale on April 9, 1974. For the three years prior to the foreclosure, various payment agreements had been tried with both the mortgagor and a corporation which purchased the stock of the mortgagor in July of 1972. The original mortgagor was in default in the amount of $400,000 on March 10, 1971, when the mortgage was assigned to HUD. HUD and the mortgagor agreed to a payment plan. The mortgagor again stopped payments. HUD began foreclosure proceedings but cancelled the action when the mortgagor made the payments past due under the payment plan. In May of 1972 the mortgagor again defaulted, and HUD again began foreclosure proceedings. In July, 1972, Educational Development and Research Corporation purchased the mortgagor's stock and made the back payments due for April, May, June and July. In August, HUD again cancelled the foreclosure action. HUD began foreclosure proceedings again when the corporation was $252,000 in arrears in payments.

Subsequent to purchasing the home at the foreclosure sale, HUD contracted with a medical management company to operate the home. During the period when it oper-

ated the home, HUD was seeking to sell the home. For various reasons the home was operating at a loss, and by July of 1976, the total operating deficit was $847,394. HUD decided to close the home. The last patient vacated the home on September 28, 1976. The home has since been sold to a private party.

Plaintiffs' claim that they are entitled to relocation benefits. The URA provides benefits for persons displaced as a result of Federal or Federally assisted programs. 42 U.S.C. § 4621. Displaced persons are defined in the Act as:

"any person who . . . moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance;" 42 U.S.C. § 4601(6).

The first portion of this definition, moving "as a result of the acquisition," has been referred to as the acquisition definition. The second portion, moving "as the result of the written order of the acquiring agency" has been referred to as the notice definition.

Plaintiffs bring their claim under the notice definition. They do not argue that they moved as a result of HUD's acquisition; but, rather, that they qualify under the notice definition. Plaintiffs read the notice definition to require only that the order to vacate be for a Federal program or project. They further contend that under the notice definition the acquisition itself need not have been for a Federal program or project (as plaintiffs admit it must to qualify under the acquisition definition). Plaintiffs state that the decision of HUD to close the home to facilitate its sale was a Federal program designed for the benefit of the public as a whole. 42 U.S.C. § 4621.

Plaintiffs cite the Court to *Cole v. Harris*, 571 F.2d 590 (D.C.Cir. 1977), as authority for their claim that the facts of this case entitle them to relief. This Court does not,

however, agree with the reading the United States Court of Appeals for the District of Columbia Circuit gave to § 4601(6) of the URA. Rather, it agrees with the results reached by the Seventh Circuit in *Alexander v. U. S. Dept. of Housing & Urban Development*, 555 F.2d 166 (7th Cir. 1977) and that urged by the dissent in *Cole v. Harris, supra*. The Court in *Alexander* presented with a claim brought under the notice definition held that an HUD's closing of an apartment complex after an involuntary acquisition did not constitute a "program or project". The *Alexander* opinion leaves open the question of whether a decision to close an apartment complex to facilitate the construction of a government financed project would qualify in spite of an originally involuntary acquisition. The dissent in *Cole v. Harris* stressed the position that both the acquisition and notice definitions require that an agency has made a voluntary decision to acquire property. The acquisition definition covers those situations in which the agency actually acquires the property; the notice definition, those situations where the agency dislocates persons pursuant to a plan for voluntary acquisition and then changes its mind prior to the actual acquisition. Under the reasoning of the dissent in *Cole v. Harris,* it seems that any action taken by HUD after an involuntary acquisition cannot qualify evicted tenants as "displaced persons".

It is the holding of this Court that the intent of Congress was to provide relocation benefits for those persons who are displaced due to the voluntary acquisition of property for a program or project. The "notice" definition was designed to cover those situations in which an agency made a voluntary decision to acquire property, caused the displacement of individuals, and then changed its mind about the project prior to acquisition. The closing of a nursing home subsequent to an involuntary acquisition does not fit within this definition. To hold that it did would be to write much more into the Relocation Assistance Act than Congress intended. This leaves open the question of whether a displacement

which occurs subsequent to an involuntary acquisition but for the purpose of facilitating a new project would be within the coverage of the Act. For example, HUD, after involuntarily acquiring a high-rise apartment, might decide to vacate the building, raze it and construct new low-rise housing. This is an issue that need not be reached in deciding this case.

Accordingly, defendants' motion for summary judgment is granted, the parties to bear their own costs.